## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LUPO FUTURES, LLC and ROBERT A. LAUDE, JR., | ) ) ) | |
| Petitioners, | ) ) | No. 24 C 2826 |
| v. | ) ) | Judge Sara L. Ellis |
| WEDBUSH SECURITIES, INC., | ) ) | |
| Respondent. | ) ) | |

## OPINION AND ORDER

Petitioners Lupo Futures Inc. ("Lupo") and Robert A. Laude, Jr. filed a petition to compel Defendant Wedbush Securities Inc. ("Wedbush") to arbitrate a dispute that emerged from the dissolution of their partnership before the American Arbitration Association (the "AAA"). Wedbush moves to dismiss Petitioners' petition, asserting that the Court does not have authority to compel arbitration here and that Petitioners fail to state a claim. Because the Court can resolve the pending question of arbitrability and Petitioners have stated a claim, the Court denies Wedbush's motion to dismiss. The Court also grants in part Petitioners' petition to compel. As explained below, the Court orders the parties to comply with the procedure for selecting an arbitration venue detailed in their Arbitration Agreement.

## BACKGROUND[1]

Lupo is a futures proprietary trading firm that purchases and sells futures contracts and options on the Chicago Mercantile Exchange (the "CME"). Laude is the former manager of

---

[1] The Court takes the facts in the background section from Petitioners' petition to compel and presumes them to be true for the purpose of resolving Wedbush's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). To resolve the motion to compel arbitration, the Court also considers exhibits and affidavits regarding the arbitration agreement in question. *Brown v. Worldpac, Inc.*, No. 17 C 6396, 2018 WL 656082, at *2 (N.D. Ill. Feb. 1, 2018).

Lupo.  Wedbush is a futures commission merchant registered with the Commodity Futures

Trading Commission (the "CFTC").

Lupo and Wedbush signed a Customer Agreement on December 20, 2019, in which

Wedbush agreed to act as a futures commission merchant for Lupo.  By doing so, Wedbush

provided Lupo with access to buy and sell futures and options directly on the CME.  As part of

the Customer Agreement, Laude executed a personal guarantee on Lupo's behalf.

The Customer Agreement includes an arbitration clause (the "Arbitration Agreement").

The Arbitration Agreement provides that "any controversy, claim or grievance between [Lupo]

and [Wedbush] relating to [Lupo's] account(s) shall, except as provided below, be resolved by

arbitration before a forum chosen in accordance with the procedures described herein."  Doc. 1-1

at 26.  The Arbitration Agreement continues by detailing the procedure for the parties to follow

to select their arbitration forum:

> Notification of your intent to arbitrate must be sent by certified
> mail to Wedbush at its Chicago Office.  At such time as you notify
> [Wedbush] that you intend to submit a claim to arbitration, or at
> such time as [Wedbush] notifies you of its intent to submit a claim
> for arbitration, you will have the opportunity to elect a qualified
> forum for the conducting of the proceeding.  Please note that, in
> the Customer Agreement, you have agreed that the venue for all
> arbitration proceedings shall be within the City of Chicago, State
> of Illinois.  Within ten (10) business days after receipt of a notice
> from you or at the time [Wedbush] so notifies you, [Wedbush] will
> provide you with a list of three (3) organizations whose procedures
> qualify them to conduct arbitrations in accordance with CFTC
> Rule 166.5[2], together with a copy of the rules of each forum.  If
> you fail to make such selection within forty-five (45) days, then
> Wedbush shall have the right to make such election.  If [Wedbush]
> notifies you of its intent to submit a claim for arbitration, it shall
> designate a qualified forum for conducting the proceedings.

---

[2] CFTC Rule 166.5 provides that "within ten business days after receipt of notice from the customer that
he or she intends to submit a claim to arbitration . . . the Commission registrant must provide a customer
with a list of organizations whose procedures meet Acceptable Practices established by the Commission
for dispute resolution, together with a copy of each forum listed."  CFTC Rule 166.5(c)(i).

Doc. 1-1 at 27.

In December 2023, Lupo executed a trade on the CME involving the purchase of a substantial amount of soybean options. The trade required Wedbush to post hundreds of millions of dollars in additional capital with the CME for several days. Following this trade, in early 2024, Wedbush terminated its agreement with Lupo. Wedbush asserts that it suffered damages of $30 million following the soybean option trade, which it now seeks to recover from Lupo. Lupo asserts that Wedbush still owes it over $3 million, which Wedbush maintained in Lupo's customer account.

On March 1, 2024, Petitioners provided Wedbush with email notice of its intent to arbitrate and requested that Wedbush provide it with three organizations qualified to arbitrate the claims, as required by the Arbitration Agreement. Petitioners followed their initial request with an additional email on March 4. Petitioners also sent the notice via certified mail on March 5. Wedbush received Petitioners' mailed notice of intent to arbitrate several days later.[3] Wedbush did not provide Petitioners with three organizations whose procedures qualify them to conduct arbitrations in accordance with CFTC Rule 166.5. Instead, on March 25, Wedbush emailed Petitioners with its intent to arbitrate the dispute before the CME.

On March 28, Petitioners filed their statement of claims against Wedbush with the AAA. The following week, Wedbush filed its own complaint with the CME. Both arbitrations have since been dismissed. The AAA dismissed Petitioners' filing on April 8 because Wedbush objected to the AAA as the forum, the Arbitration Agreement did not explicitly list the AAA as the forum, and no court order required arbitration before the AAA. The CME dismissed

---

[3] Petitioners state Wedbush received the certified mail containing the notice of intent to arbitrate on March 9. In an affidavit, Wedbush notes that it received Petitioners' certified mail containing the notice to intent to arbitrate on March 12, because March 9 was a Saturday and Wedbush's offices are not open on the weekends. Doc. 25-3 at 2.

Wedbush's complaint on April 15 because of the pending case before this Court, which Petitioners filed on April 8.

## ANALYSIS

Section 4 of the Federal Arbitration Act ("FAA") establishes that "[a] party . . . may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

The parties here do not disagree that their claims should be arbitrated; instead, their dispute centers around where to arbitrate those claims. Lupo seeks to compel arbitration before the AAA, while Wedbush contends that the CME provides the proper forum and that the Court has no authority to decide the dispute. Because the parties argue the same issues with respect to Wedbush's motion to dismiss and with respect to Petitioners' petition to compel arbitration, the Court discusses the motions in tandem.

## I.      The Court's Authority

Wedbush asserts several reasons for why the Court should dismiss Petitioners' petition to compel arbitration. First, Wedbush argues that the question of where to arbitrate constitutes a procedural question that must be decided by an arbitrator.[4] The Supreme Court recognized a

---

[4] While Wedbush fashions its argument as one related to jurisdiction, it improperly "conflates jurisdiction to hear the case with the propriety of relief. If the controversy could be in federal court but for the arbitration agreement . . . the court has subject matter jurisdiction." *INTL FCStone Fin., Inc. v. Jacobson*, No. 19 C 1438, 2019 WL 2356989, at *3 (N.D. Ill. June 4, 2019), *appeal dismissed*, 950 F.3d 491 (7th

presumption that "procedural questions which grow out of the dispute and bear on its final disposition" and "allegations of waiver, delay or a like defense to arbitrability" should be decided by an arbitrator. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002); *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) (following the *Howsam* framework in finding that procedural questions are presumptively decided by arbitrators). By contrast, questions of arbitrability remain presumptively for courts to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" (citation omitted)); *Shriner v. Signal Fin. Co.*, 92 F. App'x 322, 325 (7th Cir. 2003) ("The question of whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). Questions of arbitrability include situations where "contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam*, 537 U.S. at 83–84. Ultimately, however, because "arbitration agreements are simply contracts," *Coinbase, Inc. v. Suski*, --- U.S. ----, 144 S. Ct. 1186, 1192 (2024), parties may still choose to "delegate threshold arbitrability questions to the

---

Cir. 2020). Although Petitioners bring their claim under Section 4 of the FAA, that does not provide the Court with subject matter jurisdiction over the controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). Instead, the Court must "look through" the Section 4 claim to determine whether the underlying action is one "predicated on an action that 'arises under' federal law." *Id.* at 62; *Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 288 (7th Cir. 2016) ("In other words, if the claim sought to be arbitrated arises under federal law (or § 1332 applies), then per § 4 the district court has subject-matter jurisdiction of a suit seeking an order to arbitrate."). Because Petitioners' underlying claim satisfies diversity jurisdiction, the Court has jurisdiction to hear this claim.

arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

"Where to arbitrate is a question of arbitrability, not procedure," so the presumption remains that the Court will determine where the parties should arbitrate so long as the Arbitration Agreement does not clearly and unmistakably delegate the issue to an arbitrator. *INTL FCStone Fin., Inc.*, 2019 WL 2356989, at *4. Here, the Arbitration Agreement does not explicitly delegate issues of arbitrability to an arbitrator. The Arbitration Agreement delineates "any controversy, claim or grievance between [Lupo's] and [Wedbush] relating to [Lupo's] accounts" as the issues for arbitration. Doc. 1-1 at 26. Where the arbitration occurs does not bear any relation to Lupo's account with Wedbush. And without any other clear and unmistakable evidence that the parties intended for an arbitrator to decide where the parties should arbitrate, the Court retains the ability to decide that question. *See First Options*, 514 U.S. at 943 ("If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."); *cf. Trustmark Ins. Co. v. Fire & Cas. Ins. Co. of Conn.*, No. 02 C 0934, 2002 WL 832567, at *2 (N.D. Ill. May 2, 2002) (determining that an arbitrator, and not the court, must determine where to arbitrate because the contract provided that "any dispute or difference of opinion hereafter arising with respect to this Contract . . . shall be submitted to arbitration").

Next, Wedbush asserts that the Court cannot decide where the parties arbitrate because doing so requires the Court to interpret CME Rule 600.A, a role better suited for the CME. CME Rule 600.A requires that CME members arbitrate all matters before the CME. Admittedly,

arbitration bodies are "comparatively more expert about the meaning of their own rule[s]" and are "comparatively better to interpret and to apply [them]." *Howsam*, 537 U.S. at 85. That said, while the Seventh Circuit has not explicitly ruled on the issue of whether a self-regulating organization's rules must govern any given arbitration agreement between its members, it recognizes that some other circuits have found "the obligation to arbitrate under [a self-regulating organization's rules] can be superseded or waived by specific agreement of the parties." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 503 (7th Cir. 2020) (dismissing the appeal on other grounds) (citing *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) (holding that "different or additional contractual arrangements for arbitration can supersede the rights conferred on a customer by virtue of a broker's membership in a self-regulating organization")). Such a conclusion flows from the fact that arbitration agreements are contracts, which the Court must "interpret . . . as written." *Henry Schein*, 586 U.S. at 68; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (noting that because arbitration is a matter of contract, "courts must rigorously enforce arbitration agreements according to their terms"). Interpreting the contract as written here does not require the Court to interpret CME Rule 600.A as the Arbitration Agreement does not reference the rule. Nor does the Arbitration Agreement require the parties to arbitrate before the CME. Instead, it provides that the arbitration "shall . . . be resolved by arbitration before a forum chosen in accordance with the procedures described herein." Doc. 1-1 at 26. Because Petitioners and Wedbush agreed to a set process to determine the proper body before which to arbitrate their claims, the Court finds that the Arbitration Agreement supersedes CME 600.A.'s requirement that the parties proceed before the CME.

Wedbush's final argument—that the question of where to arbitrate "sounds in waiver"—also fails. While allegations of waiver "or a like defense to arbitrability" are presumptively for the arbitrator to decide, *Howsam*, 537 U.S. at 84, here, Petitioners do not argue that Wedbush waived its right to defend against the pursuit of arbitration. Instead, they appear to raise waiver to justify their decision to pursue arbitration before the AAA. Accordingly, the petition does not raise a defense to arbitrability that an arbitrator, and not the Court, must consider. Therefore, the Court finds that none of Wedbush's arguments against the Court's authority to decide the petition to compel have merit and so proceeds to Wedbush's remaining arguments against the petition.

## II.    Failure to State a Claim

Wedbush next argues that Petitioners have not stated a claim under Section 4 because they cannot show that Wedbush failed to arbitrate. One of the three elements Petitioners must show for this Court to compel arbitration is Wedbush's refusal to arbitrate. *See Zurich*, 417 F.3d at 687. Wedbush argues that it never refused to arbitrate but in fact agreed to arbitrate, as evidenced by its filing for arbitration with the CME. However, in failing to comply with the procedures that required it to provide three arbitration bodies to Petitioners after they indicated their intention to arbitrate, Wedbush refused to arbitrate according to the terms of the Arbitration Agreement. *See U.S. Bridge Fed'n v. Bertens*, No. 21 C 1334, 2021 WL 12178986, at *2 (N.D. Ill. Nov. 29, 2021) (finding that the defendant had refused to arbitrate because it refused to

arbitrate as dictated under the written agreement). Therefore, the Court finds that Petitioners have stated a claim under Section 4.

## III.    Compelling Arbitration

Finally, then, the Court turns to Petitioners' petition to compel arbitration specifically before the AAA. The FAA instructs the Court that when an arbitration agreement includes a "provision . . . for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method should be followed." 9 U.S.C. § 5. Here, the Arbitration Agreement explains that once Petitioners sent Wedbush the notification of their intent to arbitrate via certified mail, Wedbush had forty-five days to provide Petitioners with the names of three organizations whose procedures qualify them to conduct arbitrations in accordance with CFTC Rule 166.5. Only if Petitioners failed to select a forum from the three options provided by Wedbush could Wedbush unilaterally select the forum. The Arbitration Agreement does not provide a process for what should occur if Wedbush failed to provide the three organizations to Petitioners. The parties do not dispute that Petitioners provided Wedbush notice of their intent to arbitrate via certified mail, nor do they dispute that Wedbush failed to provide Petitioners with three options for arbitration.

Petitioners argue that the Court should name the AAA as the proper arbitrator here because they complied with the procedure in the agreement. However, the Court does not find Petitioners' position—that they could single-handedly elect the body to arbitrate if Wedbush did not provide it with three options—supported by the Arbitration Agreement. The Arbitration Agreements' procedure created a process that required both parties' input to determine an acceptable location for arbitration. If the Court were to order arbitration before the AAA, it would "negate[] the parties' intention to mutually agree on a location." *Trustmark Ins. Co.*, 2002 WL 832567, at *2 (finding it improper for one party to insist on a forum through a motion to

compel when the arbitration agreement required the parties to mutually select an arbitration forum). Instead, in keeping with the Arbitration Agreement's direction and to satisfy the parties' intent to mutually select the arbitration forum, the Court orders Wedbush to provide a list of three organizations with procedures consistent with the requirements of CFTC Rule 166.5 from which Petitioners may select the arbitration forum. *Jacobson*, 950 F.3d at 500 ("[T]he court issued an order to arbitrate under the terms of arbitration agreements that defendants entered voluntarily. That is a pro-arbitration decision, and that is what § 2 and § 4 of the FAA require."); *Burns v. Hamilton*, No. 1:02-CV-1388-SEB, 2003 WL 23104230, at *4 (S.D. Ind. Nov. 7, 2003) (ordering the parties to comply with the procedure for selecting a qualified forum as stated in the arbitration agreement). Wedbush must provide three organizations with procedures consistent with the requirements of CFTC Rule 166.5 to the Petitioners by August 2, 2024. Petitioners then have until September 16, 2024 to respond with their selection, after which the parties must institute arbitration proceedings in Petitioners' selected forum.

## CONCLUSION

The Court grants in part Petitioners' motion to compel arbitration [12] and denies Wedbush's motion to dismiss [22]. The Court orders Wedbush to provide Petitioners with a list of three arbitration bodies with rules compliant with CFTC Rule 166.5 by August 2, 2024. Upon receipt of the three options from Wedbush, Petitioners must select an arbitration body by September 16, 2024. The parties should file a joint statement by September 18, 2024, confirming compliance with the dates included in this order.

Dated: July 22, 2024

_____
SARA L. ELLIS
United States District Judge